## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA
## COURT FILE NO.:

| | |
|---|---|
| Emily Ruth Nelson,<br><br>         Plaintiffs,<br><br>v.<br><br>Experian Information Solutions, Inc., and<br>Trans Union LLC,<br><br>         Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Emily Ruth Nelson, brings this Complaint and Jury Demand against Defendants, Trans Union, LLC, and Experian Information Solutions, Inc., and state the following allegations and claims for relief:

### INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both

emotionally and economically, whenever inaccurate or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and similar interested parties) information commonly called "consumer reports" concerning individuals who may be applying for retail credit to lease an apartment to obtain a mortgage or employment or the like.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq*. (the "FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers. The FCRA sets forth this and many other requirements for CRAs' operations.

6.     This action seeks compensatory, statutory, and punitive damages, costs of suit, and reasonable attorneys' fees for the Plaintiff resulting from Experian and Trans Union's failure to abide by the requirements of the FCRA as more fully described below.

## JURISDICTION

7.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq.*

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District, and Defendants conducts business in this District. See *Ford Motor Co. vs. Montana Eighth Judicial District Court*, 2021 WL 1132515 (U.S. March 25, 2021).

## PARTIES

9.    Plaintiff, Emily Ruth Nelson (hereinafter "Plaintiff") is a natural person who resides in the county of Cass, state of North Dakota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.   Defendant Trans Union, LLC (hereinafter "Trans Union" or "Defendant Trans Union") regularly conducts business in the state of North Dakota and has a principal place of business at 555 West Adams Street, Chicago, IL 60661. Defendant Trans Union has an agent for service in North Dakota at Corporation Service Company, 418 N. 2nd St., Bismarck, ND 58501. Defendant Trans Union regularly assembles and/or evaluates consumer credit information to furnish consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Defendant Trans Union, therefore, is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

11.   Defendant Experian Information Solutions, Inc (hereinafter "Experian" or "Defendant Experian") is a foreign corporation incorporated under the laws of the state

of Ohio, is licensed to do business in the state of North Dakota, regularly conducts

business within said State, and has a registered agent for service of CT Corporation

System Inc., located at 120 W. Sweet Ave., Bismarck, ND 58504. Defendant Experian

is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f), regularly

engaged in the business of assembling, evaluating, and dispersing information

concerning consumers for the purpose of furnishing "consumer reports,"

## FACTUAL ALLEGATIONS

### Summary of the Fair Credit Reporting Act

12.   The FCRA governs the conduct of consumer reporting agencies in an effort to preserve

the integrity of the consumer banking system and to protect the rights of consumers to

fairness and accuracy in the reporting of their credit information.

13.   The purpose of the FCRA is to require consumer reporting agencies to "adopt

reasonable procedures for meeting the needs of commerce for consumer credit,

personnel, insurance, and other information in a manner which is fair and equitable to

the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information...."[1]

14.   The FCRA further requires that when preparing consumer reports a consumer

reporting agency must follow "reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates."[2]

---

[1] 15 U.S.C. § 1681(b).
[2] 15 U.S.C. § 1681e(b).

## Processing of Credit Information

15. The CRAs regularly receive information from various sources around the country, including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

16. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

17. The CRAs collect information from thousands of furnishers.

18. The process by which the CRAs receive, sort, and store information is largely electronic.

19. Furnishers report credit information to the CRAs through the use of coded tapes that are transmitted to Experian, Trans Union, and Equifax on a monthly basis through software known as Metro 2.

20. The CRAs take the credit information reported by furnishers and create consumer credit files.

21. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

22. The CRAs know that different consumers can have similar names.

23. The CRAs know that different consumers can have similar social security numbers.

24. The CRAs know that different consumers with similar names can also have similar social security numbers.

25.     The CRAs match tradelines, collections and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline, collection or public record to the information Experian, Trans Union and Equifax maintain about the consumer in the consumer's credit file or files.

26.     The CRAs accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

27.     Sometimes the CRAs matching algorithms match information belonging to one consumer to the credit file of another consumer, resulting in what is commonly known in the industry as a mixed or merged credit file.

### The CRA's Chronic Mixed File Problem

28.     Mixed files are chronic causes of inaccuracies that the CRAs have known about for almost four decades.[3]

29.     Mixed files have been the subject of a regulatory enforcement action, attorney general investigations and of hundreds, if not thousands, of consumer complaints and litigation.[4]

30.     In the mid-1990's, the Federal Trade Commission and various state attorney generals' offices charged the nationwide CRAs with violations of the FCRA. [5]

---

[3] *See e.g., Thompson v. San Antonio Retail Merchants Ass'n*, 682 F..22d 509 (5th Cir. 1982).

[4] *See e.g., Alabama v. Trans Union*, Civ. No. 92-C-7101 (N.D. Ill. Oct. 16, 1992) (Consent Order); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) (consumer reporting agency improperly mixed father's credit information into son's credit file).

[5] Including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah, and Washington.

31.    The government enforcement actions required the CRAs to improve their procedures and prevent mixed files. [6]

32.    The CRAs agreed to maintain reasonable procedures to avoid: (i) including a consumer report information identifiable as pertaining to a consumer other than the consumer for whom a permissible purpose exists as to such report; and (ii) displaying files identifiable as pertaining to more than one consumer in response to a subscriber request on one consumer.

33.    Further, the CRAs agreed to prevent reporting to subscribers credit information that pertains to a particular consumer unless the CRA has identified such information by at least two of the following identifiers: (i) the consumer's name; (ii) the consumer's social security number; (iii) the consumer's date of birth; (iv) the consumer's account number with a subscriber or a similar identifier unique to the consumer.

34.    The CRAs have been defendants in mixed file related FCRA lawsuits for decades.

35.    One of the earliest mixed file cases, *Thomas v. Trans Union*, resulted in a $1.3 million verdict against Trans Union in 2002. [7]

---

[6] *See FTC v. TRW, Inc.*, 784 F.Supp. 361 (N.D. Tex. 1991)) ((amended by N.D. Tex. Jan. 14, 1993) (agreed order amending consent order); *TRW, Inc. v. Morales*, CV-3-91-1340-H (N.D. Tex.. Dec.. 10,, 1991); *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 FTC 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996); and *Alabama v. Trans Union, Corp.*, CV-92C7101 (N.D. Ill. Oct. 26, 1992).

[7] *Thomas v. Trans Union*, Case No. 3-00-01150 (D. Or. 2002).

36.    In 2007, Angela Williams sued Equifax in Florida and alleged Equifax mixed her file with another consumer with a similar name. The jury found in favor of Angela Williams and entered a verdict against Equifax for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages.[8]

37.    In July of 2013, Judie Miller sued Equifax in Oregon and alleged that Equifax mixed her file with another consumer who had a different social security number, date of birth and address. The jury found in favor of Ms. Miller and entered a verdict against Equifax for over $18 million, including $180,000.00 in actual damages and $18.4 million in punitive damages.[9]

38.    Trans Union and Experian are aware of these verdicts.

39.    In 2012, New York Attorney General Eric T. Schneiderman launched an investigation into Experian, Trans Union, and Equifax after all three agencies were the subject of numerous complaints about errors on state residents' credit reports, including mixed files, and the onerous process to fix them.

40.    This three-year long investigation ultimately culminated in a Settlement agreement between the NYAG and the CRAs.[10]

---

[8] *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008).

[9] *Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013).
[10] *In the Matter of Investigation by Eric T. Schneiderman of Experian, Equifax and Trans Union*, Settlement Agreement, dated March 8, 2015 (the "**NYAG Settlement Agreement**").

41.     Through this investigation, Experian "produced a substantial volume of documents

        and information to the NYAG."[11]

42.     The NYAG and the CRAs also met on multiple occasions to discuss the concerns

        raised by the NYAG.[12]

43.     Among the concerns raised by the NYAG, were concerns about mixed files which the

        NYAG Settlement Agreement describes as follows:

        Credit report errors generally arise due to incomplete or incorrect information
        provided by furnishers or consumers; fraud and identity theft; and, in some cases,
        through the CRAs' processes of matching information provided by furnishers to an
        individual consumer's credit files. For example, when consumers have similar names
        and share other identifying information such as an address, some, or all of the credit
        information of one consumer can become "mixed" into the file of another consumer.
        Consumers may not be aware that their credit information has become mixed with
        another person's credit information.

        The CRAs employ sophisticated algorithms for matching the data submitted by
        furnishers to the credit files of individual consumers. The matching systems use
        various combinations of identifying information such as name, address, and social
        security number to match the credit data with an individual consumer's credit files. In
        order to take into account minor errors and omissions made by consumers and data
        furnishers, the matching systems do not require exact matches for all of the various
        identifying items. Thus, a CRA's matching system might, for example, match reported
        credit information to a particular consumer even where the reported social security
        number does not match all nine digits of the consumer's social security number, where
        several other identifying items are an exact match. The flexibility in the CRAs'
        matching system can benefit consumers by ensuring that positive credit information is
        not omitted from a consumer's file based on minor omissions or errors by the
        consumer or creditor in recording the consumer's identifying information. On the
        other hand, the flexibility in the matching system may, in certain circumstances, lead
        a CRA to erroneously assign the credit information of one person to another person's
        credit file, creating a "mixed file."[13]

---

[11] NYAG Settlement Agreement, at 7.
[12] Id.
[13] NYAG Settlement Agreement, at 4-5.

44.    As explained further below, it was exactly these types of matching algorithms employed by Trans Union, Experian and Equifax which caused Plaintiff's credit file to be mixed.

45.    While the CRAs denied any wrongdoing they agreed to make various changes to their practices.[14]

46.    Among other things, the CRAs, including Trans Union, Experian and Equifax, agreed to the following:

The CRAs shall implement an automated process to share relevant information about consumers who dispute information contained in their credit reports when a CRA confirms that a consumer's credit file information was mixed with that of another identified consumer (hereafter referred to as a "Confirmed Mixed File"). The CRAs shall develop and share best practices for sharing Confirmed Mixed File information among the CRAs, which shall include, but are not limited to, the following actions:

i.    Upon receipt of notice of a Confirmed Mixed File from another CRA, the receiving CRAs shall: (a) conduct a reasonable investigation into whether the disputed information is associated with the affected consumer in the CRA's credit database; and (b) take reasonable steps to avoid reporting any indicative information or tradelines deemed inaccurate because they belong to another identified consumer.

ii.    The CRAs shall analyze their shared data on Confirmed Mixed File information and other data concerning the manner of reporting tradelines and indicative information to determine other appropriate actions, if any, that should be taken to reduce the incidence of Confirmed Mixed Files.

iii.    The CRAs shall develop guidelines and procedures for communicating with consumers about mixed files and shall create educational content about mixed files generally, as part of the consumer education enhancements in Sections

---

[14] *Id*. at 7-8.

III.B.7.d and III.C.1.[15]

47.    A mixed or merged credit file is the result of the CRAs inaccurately merging credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer, including tradelines, collections and public records resulting from consumers having similar personal identifying information.

48.    There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by the CRAs to match credit information to a particular consumer's credit file.

49.    The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to the CRAs.

50.    A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to the CRAs.

51.    These rules also determine which credit files are merged to create a complete consumer report.

52.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

---

[15] NYAG Settlement Agreement, at 18-19.

53.  Despite the CRAs' long-standing and specific knowledge of a mixed file problem, Plaintiffs' credit reports were still generated by the CRAs containing information belonging to another consumer.

### Plaintiff's Background Factual Allegations

54.  In September 2024, Plaintiff checked her Experian and Trans Union credit reports and noticed many accounts and personal identifying information that did not belong to her.

55.  The inaccurate personal identifying information included a name, social security number, date of birth, addresses, and telephone numbers that did not belong to Plaintiff.

56.  Specifically, one of the names listed under the personal information section of Plaintiff's Experian report included the name Emily Ann Nelson ("Emily A").

57.  Unbeknownst to Plaintiff, Defendants Experian and Trans Union had mixed Plaintiff's credit file with Emily A.

58.  Defendants Trans Union and Experian did in fact mix Plaintiff's credit file with Emily A as is obvious when reviewed.

59.  On October 17, 2024, Plaintiff disputed the accuracy of the accounts and personal identifying information contained in her Trans Union and Experian credit reports, pursuant to 15 U.S.C. § 1681i, by mailing Trans Union and Experian a dispute letter stating the following:

*Credit Bureau Dispute Departments:*

*I recently reviewed my credit report from you and noticed a multitude of incorrect entries on my report. The following accounts and personal information do not belong to me:*

*Accounts*
- *AFFIRM INC – Partial Acct # IHMT\*\*\*\**
- *BANK OF AMERICA – Partial Acct #6501\*\*\*\**
- *BEST BUY/CBNA - Partial Acct #6035\*\*\*\**
- *BSI FINANCIAL SERVICES - Partial Acct #1401\*\*\*\**
- *FORD MOTOR CREDIT - Partial Acct #5359\*\*\*\**
- *LOANCARE - Partial Acct #6230\*\*\*\**
- *WFBNA CARD - Partial Acct #4465\*\*\*\**

*Personal information*
- *Name*
  - *Emily Ann Nelson*
- *Addresses*
  - *8339 139th Ct., Apple Valley MN, 55214*
  - *15156 December Trl., Rosemount MN, 55068*
  - *1516 Warren St., Apt. 103, Mankato MN, 56001*
  - *11 Broadway STE 1515, New York, NY 10004*
- *Social Security Number Variations*
  - *XXX-XX-2876*
- *Telephone Numbers*
  - *651-236-0186*
  - *651-423-4101*
  - *616-634-2633*
  - *701-235-3104*
  - *301-868-5304*
  - *886-707-4595*
  - *508-509-5096*

*These accounts and personal information do not belong to me and must be removed from my credit report immediately. See attached copies of my social security card and driver's license. Please send me a correct report as soon as possible.*

*Sincerely,*

*Emily Ruth Nelson*

60.    On or about November 18, 2024, Plaintiff received dispute results from Defendant

Experian wherein Defendant Experian deleted every account from Plaintiff's credit

report, except for a mortgage account belonging to Emily A.

61.    Due to the deletion of all but one account from Plaintiff's credit report, on November 20, 2024, Plaintiff received an email from Defendant Experian notifying her that she no longer has a FICO credit score.

62.    Plaintiff included copies of her driver's license and social security card with her disputes to Trans Union and Experian.

63.    While Defendant Experian failed to remove all account information about Emily A., Defendant Trans Union removed all mixed information as of mid-November.

64.    However, despite removing all mixed information from Plaintiff's credit profile, Defendant Trans Union continues to release Plaintiff's credit reports to Emily A.

## Facts Pertaining to Emily A

65.    Unbeknown to Plaintiff, in March 2024, Emily A received notice that her FICO score dropped dramatically. Emily A then checked her Trans Union and Experian credit reports and noticed a plethora of inaccurate information, including, but not limited to, the following: 19 credit accounts; several addresses; several phone numbers; the last four digits of a social security number; date of birth; and the name Emily R. Nelson.

66.    Unbeknown to Plaintiff, Emily A disputed the contents of her Trans Union and Experian credit reports numerous times to no avail, forcing her to file a lawsuit in the United States District Court District of Minnesota (Case No. 24-cv-02067-PJS-TNL) to remove the inaccurate information from her Trans Union and Experian reports.

67.    Unbeknown to Plaintiff, Emily A has explicitly told Defendants Trans Union and Experian, through her abundance of disputes, that they are mixing her credit profile with Plaintiff's credit profile.

68. Despite repeated notice, Defendant's Trans Union and Experian refuse to unmix, untangle, or separate Emily A and Plaintiff's credit profiles from one another.

## Facts Specific to Defendant Experian

69. Defendant Experian's merging and matching algorithms have caused Plaintiff's credit files to be mixed with credit information and/or credit files belonging to Emily A.

70. Within the two years previous to the filing of this Complaint, Defendant Experian prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d), pertaining to Plaintiff that contained misleading or inaccurate information that belonged to Emily A to numerous third parties.

71. Defendant Experian failed to maintain reasonable procedures, like the credit reporting agency Equifax did, to prevent Plaintiff's credit information and/or credit files from being mixed with the credit information and/or credit files of Emily A.

72. Defendant Experian knows that its databases mix credit information and credit files that should not be mixed, including credit information resulting from similar names.

73. Defendant Experian have been sued by consumers and suffered judgments as a result of mixing consumer credit information and/or credit files.

74. When Defendant Experian assemble consumer reports for their subscribers, it allows these subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases belong to another consumer.

75. Defendant Experian also fails to require an exact match of all digits of a consumer's

social security number which may in some cases result in the inclusion of credit information which belongs to another consumer.

76. Unlike Equifax, Defendant Experian has failed to follow reasonable procedures to assure the maximum possible accuracy of the Plaintiff's credit file and of her consumer reports.

77. Defendant Experian's failures to follow reasonable procedures are willful.

78. A consumer's right to dispute information contained in a consumer report is an important safeguard necessary to ensure accuracy. The legislative history of the FCRA rightly characterizes the dispute and correction process as "the heart of ... efforts to ensure the ultimate accuracy of a consumer report."

79. Within the two years previous to the filing of this Complaint, Defendant Experian prepared, complied, and furnished (to creditors and Emily A) Plaintiff's credit reports that contained misleading, incomplete and/or inaccurate information tradelines belonging to Emily A.

80. Within the two years previous to the filing of this Compliant, Defendant Experian compiled, prepared, and furnished Plaintiff's credit report without following reasonable procedures to assure maximum possible accuracy of the information contained therein, in violation of 15 U.S.C. § 1681e(b).

81. Defendant Experian's failures to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the Plaintiff's credit reports are negligent and/or willful.

82. Defendant Experian's violations of 15 U.S.C. § 1681e(b) caused Plaintiffs to suffer

out-of-pocket loss related to mailing disputes to Defendants, loss of their precious

free (non-work) time, loss of sleep, anxiety, mental anguish, and emotional distress.

**Plaintiff's Dispute with Defendant Experian**

83.  Between March and October 2024, Defendant Experian was repeatedly notified of

Plaintiff and Emily A's mixed credit profile through Emily A's credit disputes.

84.  On October 17, 2024, Plaintiff submitted her own thorough dispute with sufficient

information for Defendant Experian to identify again and fix the mixed file problem.

85.   In response to this dispute, Defendant Experian was required to conduct

reinvestigations into this specific credit and loan accounts pursuant to 15 U.S.C. §

1681i.

86.  Despite this repeated notice, Defendant Experian responded to Plaintiff's October 17,

2024, dispute by deleting all credit accounts from Plaintiff's Experian credit report,

except for one mortgage account belonging to Emily A.

87.  Notwithstanding notice of the mixed file problem from both Plaintiff and Emily A,

Defendant Experian failed to conduct reasonable and independent investigations into

Plaintiff's dispute, failed to review all relevant information available to it, and failed

to update and/or remove the inaccurate account information in violation of 15 U.S.C.

§ 1681i.

88.  Defendant Experian's violations of 15 U.S.C. §1681i described herein were willful

and/or negligent.

89.  Defendant Experian's violations of 15 U.S.C. § 1681i caused Plaintiff to suffer

anxiety, mental anguish, and emotional distress.

**Defendants Trans Union and Experian Released Plaintiff's Credit Reports to Emily A**

90.     Defendants merging and matching algorithms and their inability to separate Plaintiff from Emily A, despite repeated notice, has caused both Defendants Trans Union and Experian to release Plaintiff's credit reports to Emily A.

91.     In November 2024, Emily A requested her credit report from Defendant Trans Union.

92.     On November 22, 2024, Emily A received a Trans Union credit report in the mail addressed to Plaintiff, containing the last four digits of Plaintiff's social security number and Plaintiff's credit history.

93.     Defendant Trans Union released Plaintiff's credit report to persons who did not have the right to access it, such as Emily A, in violation of 15 U.S.C. § 1681b.

94.     Sometime before November 18, 2024, Emily A, once again, disputed the accuracy of accounts and personal information appearing on her Experian credit report, explicitly stating that the accounts and information belonged to Plaintiff, not Emily A.

95.     On November 18, 2024, Emily A. received dispute results through her online Experian account.

96.     The dispute results of November 18, 2024, were addressed to Plaintiff, containing the last four digits of Plaintiff's social security number and Plaintiff's credit history.

97.     Defendant Experian released Plaintiff's credit report to persons who did not have the right to access them (Emily A.) in violation of 15 U.S.C. § 1681b.

98.     Defendants' violation of 15 U.S.C. § 1681b described here were willful and/or negligent.

99. Defendants' violations of 15 U.S.C. § 1681i caused Plaintiff to suffer anxiety, mental anguish, and emotional distress.

## TRIAL BY JURY

100. Plaintiff is entitled to, and hereby demands, a trial by jury.  U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I.

## AGAINST DEFENDANT EXPERIAN
## VIOLATION OF THE FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681e(b)

101. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

102. Defendant Experian violated 15 U.S.C. § 1681e(b) by furnishing and/or publishing Plaintiff's credit reports to entities without following reasonable procedures to assure the maximum possible accuracy of the information contained therein.

103. Defendants' conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

104. Alternatively, Defendants' violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

105. As a result of Defendants' violations of the FCRA, Plaintiff has suffered out-of-pocket loss, lost time, detriment to Plaintiff's credit rating, mental anguish, and

emotional distress in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

106. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendants Trans Union and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

107. anguish, and emotional distress in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

108. Younger Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.

### AGAINST DEFENDANT EXPERIAN
### VIOLATION OF THE FAIR CREDIT REPORTING ACT –
### 15 U.S.C. § 1681i

109. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

110. Defendant Experian violated 15 U.S.C. §1681i when it failed to investigate disputes concerning Plaintiff's credit file reasonably.

111. Defendant Experian was notified by Plaintiff and Emily A. multiple times that Defendant Experian had mixed Plaintiff and Emily A.'s credit profiles.

112. Despite repeated notice, Defendant Experian failed to conduct reasonable and independent investigations into Plaintiff's dispute, failed to review all relevant

information available to it, and failed to update and/or remove the inaccurate account information.

113.    Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

114.    Alternatively, Defendant Experian's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

115.    As a result of Defendant Experian's violations of the FCRA, Plaintiffs have suffered out-of-pocket loss, lost time, detriment to Plaintiff's credit rating, mental anguish, and emotional distress in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

116.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III.

### AGAINST BOTH DEFENDANTS
### VIOLATION OF THE FAIR CREDIT REPORTING ACT –
### 15 U.S.C. § 1681b

117.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

118. Both Defendants Trans Union and Experian violated 15 U.S.C. § 1681b by releasing Plaintiff's credit reports to persons who did not have the right to access them, including but not limited to Emily A.

119. Defendants' conduct, actions, and inactions were willful, rendering them liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

120. Alternatively, the Defendants' violations were negligent, rendering them liable for damages under 15 U.S.C. § 1681o.

121. As a result of Defendants' violations of the 15 U.S.C. § 1681b**,** Plaintiff has suffered out-of-pocket loss, lost time, detriment to Plaintiff's credit rating, mental anguish, and emotional distress in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

122. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendants Trans Union and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- an award of actual damages caused by Defendants' violations of the FCRA, pursuant to 15 U.S.C. § 1681n and 1681o;
- an award of punitive damages against Defendants for their willful noncompliance with the FCRA, pursuant to 15 U.S.C. 1681n;
- an award of costs and attorneys' fees against Defendants, pursuant to 15 U.S.C. §§ 1681n and 1681o; and
- such other and further relief as the Court may deem just and proper.

Dated this 21st day of January 2025.

Respectfully submitted,


By: _s/Thomas J Lyons Jr
Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 249646
Carter B. Lyons, Esq.
MN Attorney I.D. #: 403655
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com
carter@consumerjusticecenter.com


*ATTORNEYS FOR PLAINTIFF*

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF</u>

I, Emily Ruth Nelson, declare under penalty of perjury, as provided for by the laws

of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this <u>20th</u> day of January 2025
.

<u>s/Emily Ruth Nelson</u><br>Emily Ruth Nelson